Donald PAIGE and Andrew Harris,
Plaintiffs-Appellants,

v.

HENRY J. KAISER COMPANY, Standard Oil Company of California, Chevron Chemical Company, Eugene Green, and Does 1–20 inclusive, Defendants-Appellees.

HENRY J. KAISER COMPANY, Standard Oil Company of California, Chevron Chemical Company, Petitioners,

v.

UNITED STATES DISTRICT COURT FOR the NORTHERN DISTRICT OF CALIFORNIA, Respondent,

and

Donald Paige and Andrew Harris, Real Parties in Interest.

Nos. 84–2246, 84–7866.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 11, 1985.

Decided Aug. 27, 1987.

Henry S. Hewitt and Alice M. Beasley, San Francisco, Cal., for plaintiffs-appellants and respondent.

Gilmore F. Diekmann, Jr. and Debra F. Pell, San Francisco, Cal., for defendants-appellees.

Edwin L. Currey, Jr., San Francisco, Cal., for petitioners.

HUG, Circuit Judge:

Appellants brought this action in a California state court alleging that they had been required by their employer to fill generators with gasoline under unsafe conditions despite their protests, and that when they refused to do so, they were fired. The complaint alleged seven causes of action. The case was removed to federal court on the ground that the claims asserted were artfully pleaded federal claims.

## I.

Two claims for wrongful discharge based on state law were held to be completely preempted by section 301 of the Labor Management Relations Act ("LMRA") and thus were held to have been properly removed and barred by the statute of limitations. The principal issue on appeal is whether the determination of complete preemption of either or both of the wrongful discharge claims was proper.

Paige and Harris's complaint also contained five other claims. The district court remanded these claims to state court after dismissing the wrongful discharge claims.

The appellees brought a petition for a writ of mandamus or prohibition to require the district court to retain jurisdiction of these remaining causes of action. This petition has been consolidated with the appeal of the judgment.

The first issue on this consolidated appeal is whether either or both of the state wrongful discharge claims were completely preempted and barred by the statute of limitations. The second issue concerns the question raised in the petition for mandamus, which is whether the district court properly remanded the state causes of action to the state court.

## II.

The facts as alleged by appellants Donald Paige and Andrew Harris are as follows: They worked for defendant Henry J. Kaiser Company ("Kaiser") on construction of a coal liquefaction plant for defendant Chevron Chemical Company. Appellants were employed by Kaiser as welding machine tenders pursuant to a collective bargaining agreement between Kaiser and Operating Engineers Local 3.

Appellants' duties included filling generator gas tanks. Appellants spent two to three hours each day fueling the 12 gasoline generators on the construction site. Several circumstances caused plaintiffs to believe that this work was unnecessarily and illegally hazardous: the filling was done before the engines had cooled; funnels were broken, causing leakage during pouring; the containers for carrying the fuel to the generators were in poor condition causing spillage; and much of the refueling was required to be done beneath falling sparks given off by welders.

Appellants spoke with responsible parties over an 11-day period in an attempt to correct this situation; however, no changes were ever made. On July 26, 1982, in response to the company's inaction, appellants refused to refuel a generator when so requested. Appellants were then fired by Kaiser superintendent Gene Green. The next day, Gene Green and representatives of Local 3 met and discussed the firings. After the meeting, the Local 3 representa-

tives told appellants there was nothing that could be done. Appellants then filed their state court action.

Appellants' state court complaint contained seven tort causes of action under California law: (1) the appellants were wrongfully discharged in violation of the sections of the California Labor Code that provide for the regulation of occupational safety and health [1]; (2) the appellants were wrongfully discharged in violation of an implied covenant of good faith and fair dealing; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; (5) assault; (6) Chevron and Standard, who employed Kaiser as an independent contractor and knew or should have recognized the peculiar risk of harm, willfully, maliciously, and oppressively refused to take precautions resulting in economic damage and justifying punitive damages; and (7) appellees willfully, maliciously, and oppressively required appellants to perform ultrahazardous tasks to their economic damage and justifying punitive damages.

The appellees removed the action on the ground that the wrongful discharge claims were, in actuality, claims under section 301 of the LMRA, 29 U.S.C. § 185(a) (1982), which had been artfully pled as state law claims. The appellees then filed a motion for summary judgment on the ground that the section 301 claims were barred by the statute of limitations.

In response to the appellants' motion to remand and Kaiser's motion for summary judgment, the district court found, after applying the artful pleading doctrine, that the two wrongful discharge claims were, in fact, claims under section 301 of the LMRA, and were therefore subject to removal. Having assumed jurisdiction, the court dismissed the two section 301 claims because they were barred by the applicable statute of limitations.[2] After dismissing the recharacterized state claims, the district court declined to exercise pendent jurisdiction over the remaining state law

claims and remanded them to the state court.

## III.

■ The Supreme Court succinctly outlined the requirements for removal jurisdiction based on preemption in the recent case of *Caterpillar, Inc. v. Williams*, —— U.S. ——, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987):

Only state court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship, federal question jurisdiction is required. The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *See Gully v. First National Bank*, 299 U.S. 109, 112–113, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936). The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.

(Footnotes omitted.) Under *Gully*, federal jurisdiction can be sustained only if a right created by federal law is an essential element of the claim. 299 U.S. at 112, 57 S.Ct. at 97. Under this well-pleaded complaint rule, however, the federal question must appear from the complaint itself and not from any defense that might be raised. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 10, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983). Although the plaintiff is master of his own pleadings, he may not avoid federal jurisdiction by omitting from the complaint allegations of federal law that are essential to the establishment of his claim. A complaint that does so has been characterized as an "artfully-pleaded" complaint, as opposed to a "well-pleaded complaint" that does specifically refer to the essential fed-

---

1. California Occupational Safety and Health Act ("Cal/OSHA"), Cal.Lab.Code §§ 6310, 6311, 6400, 6401, 6403, and 6404 (West.Supp.1987).

2. Appellants agree that if these claims are, in fact, artfully pled section 301 actions, they are time-barred.

eral law. The courts recharacterize the "artfully-pleaded" complaint as though it had been "well-pleaded." *Olguin v. Inspiration Consol. Copper Co.,* 740 F.2d 1468, 1471–72 (9th Cir.1984); *Garibaldi v. Lucky Food Stores, Inc.,* 726 F.2d 1367, 1370 (9th Cir.1984), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985).

■ In this case, the district court held that federal jurisdiction existed because the two wrongful discharge actions, although artfully pleaded as state torts, were, in fact, claims for breach of the collective bargaining agreement between Kaiser and Local 3, and thus were preempted by section 301 of the LMRA.[3] In determining whether the federal law preempts the state law, the essential inquiry is the intent of Congress in enacting the federal statute. *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 738, 105 S.Ct. 2380, 2388, 85 L.Ed.2d 728 (1985). Preemption may be either express or implied, and "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). In enacting section 301 of the LMRA, Congress did not state explicitly whether and to what extent it intended to preempt state law. *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 208, 105 S.Ct. 1904, 1910, 85 L.Ed. 206 (1985). Without express preemption, a state law will not be displaced unless it conflicts with federal law or would frustrate the federal scheme, or unless it is apparent from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the states. *Id.* at 209, 105 S.Ct. at 1910.

■ The preemptive force of section 301 is so powerful as to displace entirely any state cause of action for violation of a collective bargaining agreement. *Franchise Tax Bd.,* 463 U.S. at 23, 103 S.Ct. at 2853. In such a case, the action may be removed to federal court even if an otherwise adequate state cause of action may exist. *Id.* at 23–24, 103 S.Ct. at 2853–54. The Supreme Court recently reiterated that Section 301 preempts claims founded directly on rights created by collective bargaining agreements, and also claims which are substantially dependent on analysis of a collective bargaining agreement. *Caterpillar, Inc. v. Williams,* 107 S.Ct. at 2431. Tort claims such as those alleged in this case may also be governed by the terms of the collective bargaining agreement, and thus preempted. *Allis-Chalmers,* 471 U.S. at 216–18, 105 S.Ct. at 1914. Therefore, if either wrongful discharge claim is preempted because it is based on rights created by the collective bargaining agreement, then federal jurisdiction exists.

■ In their second cause of action, appellants specifically alleged that Kaiser breached a covenant of good faith and fair dealing, which appellants contend was an implied provision within the collective bargaining agreement, relying on *Cleary v. American Airlines, Inc.,* 111 Cal.App.3d 443, 168 Cal.Rptr. 722 (1980).[4]

■ The second cause of action clearly is based on an alleged breach of contract between Kaiser and appellants' labor organization. *Allis-Chalmers,* 471 U.S. at 216, 105 S.Ct. at 1914. By placing in issue the terms of the collective bargaining agreement, it is clear that the rights and liabilities of the parties are a product of the collective bargaining agreement itself, and that this claim is thus preempted by section 301. Therefore, federal removal jurisdiction existed, based on the second cause of

---

**3.** Section 301 of the LMRA provides:
   Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
29 U.S.C. § 185(a).

**4.** Collective bargaining agreements are to be interpreted by the application of federal law, not state contract law. *Local 174, International Bhd. of Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 102, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962). Thus any implication of a covenant of good faith and fair dealing would have to be based on federal, not state law.

action.[5] Having properly assumed jurisdiction, the district court correctly dismissed the second cause of action as time-barred.[6]

### IV.

Appellants' first cause of action is for wrongful discharge in violation of the public policy of California as expressed in its Labor Code. California restricts an employer's right to discharge its employees at will when such discharge is prohibited by statute or violates public policy. *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 172, 164 Cal.Rptr. 839, 841–42, 610 P.2d 1330 (1980).

Appellants' claim is based on Cal/OSHA provisions requiring employers to provide a safe place of employment, and prohibiting the discharge of employees who complain of unsafe working conditions to their employer.[7] The district court held that this was an artfully pleaded claim that was preempted by section 301 and dismissed the action as time-barred.

■ Preemption under the NLRA and the LMRA occurs in three different contexts.[8] *Garmon* preemption exists to protect the original jurisdiction of the National Labor Relations Board ("NLRB") over conduct which is prohibited or protected by the NLRA. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Therefore, if a claim is preempted under *Garmon* analysis, it is the NLRB, not the courts, which has jurisdiction. Appellees argue that the appellants, by complaining about safety conditions, were engaged in concerted activity which is protected by the NLRA. 29 U.S.C. § 157 (1982). They contend that *Garmon* therefore preempts this wrongful discharge claim. Appellants, as masters of their complaint, did not allege a violation of their rights under the NLRA, but only violations of state statutes and policy. By foregoing their claim based on federal law, the appellants may choose to plead their action as a state claim. *Caterpillar*, 107 S.Ct. at 2431. *Garmon* analysis is therefore not relevant to this case.[9]

■ A second preemption doctrine involves state laws and causes of action which concern conduct that Congress intended to be unregulated under the NLRA. Here, the conduct is neither prohibited nor protected under the NLRA, and thus is not preempted by *Garmon*. *See Metropolitan Life v. Mass.*, 471 U.S. at 749, 105 S.Ct. at 2394; *New York Tel. Co. v. New York Labor Dept.*, 440 U.S. 519, 529–30, 99 S.Ct. 1328, 1335, 59 L.Ed.2d 553 (1979) (plurality opinion).

The final preemption doctrine is under section 301 of the LMRA. As discussed earlier, section 301 preempts any action which is based on a collective bargaining agreement or whose outcome is dependent upon an interpretation of the agreement's terms. *IBEW v. Hechler*, —— U.S. ——, 107 S.Ct. 2161, 2166, 95 L.Ed.2d 791 (1987); *Allis-Chalmers*, 471 U.S. at 213, 105 S.Ct. at 1912. While we are primarily concerned with section 301 preemption, the second preemption doctrine is also relevant to this case.

---

5. Appellants voluntarily waived their appeal of the dismissal of this cause of action. *Associated Gen. Contractors v. San Francisco Unified School Dist.*, 616 F.2d 1381, 1384 (9th Cir.1980) (express waiver of an issue may occur by a statement of abandonment in appellant's brief). We address the issue, however, because it is jurisdictional.

6. See appellants' concession of this point in footnote 2.

7. See code provisions in footnote 1.

8. The National Labor Relations Act ("NLRA"), commonly known as the Wagner Act of 1935, was amended by the Labor Management Relations (Taft-Hartley) Act of 1947, and amended again by the Labor-Management Reporting and Disclosure (Landrum-Griffin) Act of 1959.

9. Furthermore, actions brought or held to arise under section 301 are not preempted under *Garmon*. The strong policy favoring judicial enforcement of such actions sustains the courts' jurisdiction of such cases even where the conduct involved would amount to an unfair labor practice within the NLRB's jurisdiction. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976); *Smith v. Evening News Ass'n*, 371 U.S. 195, 196–97, 83 S.Ct. 267, 268, 9 L.Ed.2d 246 (1962).

## A.

"[N]ot every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by section 301 or other provisions of the federal labor law." *Allis-Chalmers*, 471 U.S. at 211, 105 S.Ct. at 1911. The relevant analysis is whether the California tort action "as applied here confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 213, 105 S.Ct. at 1912. Congress did not intend for section 301 to preempt "state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id.* at 212, 105 S.Ct. at 1912.

Appellants' claim is for wrongful discharge based upon violations of state statutes and public policy. A private right of action for wrongful discharge due to safety complaints co-exists with the Cal/OSHA remedial scheme. *Hentzel v. Singer Co.*, 138 Cal.App.3d 290, 303, 188 Cal.Rptr. 159, 167–68 (1982). California's OSHA regulations protect all workers, irrespective of any labor agreement. State health and safety standards benefit all employees as individual workers, not because they are or are not members of a collective bargaining association. And California's interest in providing this private cause of action is the enforcement of the underlying statute or policy, not to regulate the employment relationship. *Garibaldi*, 726 F.2d at 1374.[10]

Appellants' complaints to their employer indicate a concern that a serious explosion could occur at the worksite. Such an explosion would endanger not only their lives, but the lives of all the workers. Just as the refusal to deliver a spoiled load of milk protected the health and safety of California citizens, *Garibaldi*, 726 F.2d at 1374, the refusal to expose gasoline to sparks and hot machinery protected the health and safety of California citizens.[11]

Thus the tort of wrongful discharge in violation of public policy exists independent of any contractual right. It is true that Article 19 of the collective bargaining agreement states that the employer will comply with all state and federal health and safety laws, including OSHA. This incorporation of existing law does not, however, require an interpretation of the contract terms; it requires an interpretation of the state law. Furthermore, allowing an employer to avoid the effects of state laws by this type of incorporation would subvert congressional intent for the NLRA to coexist with state laws which set labor standards. *Metropolitan Life v. Mass.*, 471 U.S. at 756, 105 S.Ct. at 2398. The resolution of appellants' wrongful discharge claim therefore depends upon an analysis of Cal/OSHA and California tort law. Since it is not intertwined or substantially dependent upon consideration of the terms of the labor contract, it is not preempted by section 301.

## B.

The second preemption doctrine is concerned with state interference with the policies of the NLRA. Congress's main goal in enacting the NLRA was to establish an equitable bargaining process, not to establish any particular substantive terms to which the parties must agree. *Metropolitan Life v. Mass.*, 471 U.S. at 753, 105 S.Ct.

---

10. *Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468 (9th Cir.1984), is distinguishable from *Garibaldi* and this case. Olguin alleged he had been discharged for complaining about mine safety conditions which violated the Federal Mine Safety and Health Act of 1977, 30 U.S.C. §§ 801–962 (1982 & Supp.III 1985). Thus, Olguin was not acting on behalf of any state law or policy. *Olguin*, 740 F.2d at 1475.

11. This case is thus distinguishable from *DeSoto v. Yellow Freight Systems, Inc.*, 811 F.2d 1333 (9th Cir.1987). DeSoto was fired for refusing to drive a truck whose trailer he erroneously believed did not have the proper permits. The fact that DeSoto was mistaken as to the law was central to the court's decision; no such mistaken belief is alleged here. Furthermore, health and safety concerns were not present in the case. Any potential health and safety problems from driving a truck with an unregistered trailer were negated by the fact that the trailer did indeed have the proper permits.

at 2396. State laws which set minimum safety standards do not interfere with the bargaining process itself. To preempt such laws would "allow unions and employers to bargain for terms of employment that state law forbids employers to establish unilaterally." *Metropolitan Life v. Mass.*, 471 U.S. at 755, 105 S.Ct. at 2398. Such an outcome was obviously not intended by the NLRA. In *Metropolitan Life v. Mass.*, the Supreme Court considered the legislative history of the NLRA and made the following statement:

> Most significantly, there is no suggestion in the legislative history of the Act that Congress intended to disturb the myriad state laws then in existence that set minimum labor standards, but were unrelated in any way to the processes of bargaining or self-organization. To the contrary, *we believe that Congress developed the framework for self-organization and collective bargaining of the NLRA within the larger body of state law promoting public health and safety.* The States traditionally have had great latitude under their police power to legislate as " 'to the protection of the lives, limbs, *health,* comfort, and quiet of all persons.' " *Slaughter-House Cases,* 83 U.S. (16 Wall.) 36, 62, 21 L.Ed. 394 (1873), quoting *Thorpe v. Rutland & Burlington R. Co.,* 27 Vt. 140, 149 (1855). *"States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State.* Child labor laws, minimum and other wage laws, *laws affecting occupational health and safety* ... are only a few examples." *De Canas v. Bica,* 424 U.S. 351, 356, 96 S.Ct. 933, 937, 47 L.Ed.2d 43 (1976).

471 U.S. at 756, 105 S.Ct. at 2398 (emphasis added).

Thus, the Supreme Court recognized that Congress did not intend to preempt all local regulations that touch or concern the employment relationship. Minimum state standards for health and safety ordinarily are not inconsistent with the general legislative goals of the LMRA. And in this case, since state OSHA regulations are not incompatible with the federal statutory scheme embodied in the LMRA, federal labor law is nothing more than interstitial in the sense that it merely supplements existing complementary or compatible state law.

Congressional intent not to preempt local health and safety regulations, which might arguably infringe upon federal labor law, also can be discerned from the federal Occupational Safety and Health Act of 1970 ("Fed/OSHA"), 29 U.S.C. §§ 651–78 (1982 & Supp.III 1985). Congress included a provision in Fed/OSHA whereby the federal government allowed individual states to regulate health and safety, provided the states adopted a scheme of regulation and enforcement at least as vigorous as that required by Fed/OSHA. 29 U.S.C. § 667 (1982). Acting pursuant to this invitation, California enacted the California Occupational Safety and Health Act of 1973 ("Cal/OSHA"), Labor Code § 6300 *et seq.,* which was approved by the Secretary of Labor. 29 U.S.C. § 667(c). The effect of California's enactment of stringent health and safety regulations was to substitute state standards in place of applicable federal standards. By doing so, California furthered the Congressional intent expressed in Fed/OSHA of "encouraging the States to assume the fullest responsibility for the administration and enforcement of their occupational safety and health laws...." 29 U.S.C. § 651(b)(11) (1982).

Thus, while safety standards may be a subject of bargaining between the parties, the fact that California has established minimum safety standards does not undercut the collective bargaining process. *Metropolitan Life v. Mass.,* 471 U.S. at 758, 105 S.Ct. at 2399. A number of statutes analogous to Cal/OSHA have withstood this preemption analysis in the Supreme Court.

In *New York Tel. Co. v. New York Labor Dep't.,* 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979), the Court was presented with the question whether a state may provide unemployment compensation to strikers in an industry subject to NLRB jurisdiction. A New York statute provided for the payment of unemployment benefits

to workers, after an eight-week waiting period, when their employment was terminated by a strike. The benefits were financed primarily by employer contributions. Each employer's contributions were affected by the claims of his employees against the state fund. New York Telephone Company sought a declaratory judgment that the New York statute mandating the payment of benefits to strikers at their employer's expense is inconsistent with national labor policy and therefore invalid under the supremacy clause. *Id.* at 522–25, 99 S.Ct. at 1331–33.

There was no majority opinion of the Court; the six Justices in the majority issued three opinions to explain their divergent views. Footnote 28 in *Metropolitan Life v. Mass.* summarized the plurality opinion from *New York Telephone* as follows:

> A plurality opinion affirmed the state-court decision finding no preemption in part on the ground that the 1935 Congress intended to permit the States to make these payments, and in part on the ground that the unemployment insurance statute was a law of general application designed to insure employment security in the State, and not to regulate the bargaining relationship between management and labor.

*Metropolitan Life v. Mass.*, 471 U.S. at 750–51 n. 28, 105 S.Ct. at 2395 n. 28.

In *Metropolitan Life v. Mass.*, the Court was concerned with a Massachusetts statute which required that certain minimum mental health care benefits be provided to state residents insured by an employee health care plan. The Court held that the NLRA did not preempt the state statute as applied to policies purchased pursuant to collective bargaining agreements. 471 U.S. at 758, 105 S.Ct. at 2399.

Most recently, the Court addressed a Maine statute which required, in the event of a plant closing, a specific severance payment to all employees not covered by a contract providing for severance pay. This statute, too, was held not to be preempted by the NLRA. *Fort Halifax Packing Co.*

*v. Coyne,* —— U.S. ——, 107 S.Ct. 2211, 2223, 96 L.Ed.2d 1 (1987).

The core analysis in these cases is that none of these statutes interfere with the purposes of the NLRA: the establishment of an equitable bargaining process. Likewise, Cal/OSHA and actions for wrongful discharge in violation of Cal/OSHA do not interfere with the bargaining process. As it is uniquely within the states' police powers to legislate for the health and safety of their citizens, and such regulation does not interfere with the NLRA's goals, federal law does not preempt such statutes.

■ Therefore, in light of Congressional enactments that foster state regulation of health and safety, and the fact that state regulation of occupational health and safety is a regulation of general application that in no way interferes with the legislative goals of the NLRA or LMRA, we hold that the federal labor laws do not preempt appellants' independent state law cause of action for wrongful discharge.

## V.

Appellants' state court complaint contained five additional tort claims: intentional and negligent infliction of emotional distress, assault, peculiar risk, and ultrahazardous activities. The district court held that these claims were not artfully pled, declined to exercise pendent jurisdiction, and remanded them to state court. Appellees petition for a writ of mandamus to compel the district court to retain jurisdiction of these claims.

We must first determine if the remand order is reviewable at all, and if so, whether review should be by appeal or mandamus. For the reasons stated in *Survival Systems v. U.S. District Court,* 825 F.2d 1416 (9th Cir.1987), the only avenue of review available is by mandamus.

The statutory preclusion of any type of review under 28 U.S.C. § 1447(d) (1982) is not applicable. Removal was not "without jurisdiction" since appellants' claim for breach of the covenant of good faith and

fair dealing was properly held to be preempted by federal law.

 The order is not reviewable by appeal since it did not resolve a matter of substantive law. *Clorox Co. v. U.S. District Court*, 779 F.2d 517, 520 (9th Cir. 1985); *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 276–78 (9th Cir.1984). The ruling of the district court was that the appellants' remaining state causes of action were not artfully pleaded federal claims that were preempted by federal law. This ruling does not finally resolve the issue of preemption, which may still be raised as a defense in state court. Thus, if it becomes apparent that any of these causes are indeed based upon the collective bargaining agreement, the defense of preemption could be sustained. Therefore, the only issue decided by the district court was jurisdictional, and review by appeal is not available under *Pelleport* and *Clorox.*

As in *Survival Systems*, mandamus is not proper here because the district court's order is correct as a matter of law. 825 F. 2d at 1418. The emotional distress claims, as pled, fit within the Supreme Court's ruling in *Farmer v. United Bhd. of Carpenters and Joiners of America*, 430 U.S. 290, 305, 97 S.Ct. 1056, 1066, 51 L.Ed.2d 338 (1977), since they are based on the particularly abusive manner in which the distress occurred. The remaining actions, for assault, peculiar risk, and ultrahazardous activities, are not based in any way upon the collective bargaining agreement or appellants' discharge, but are based upon activity which is alleged to violate Cal/OSHA. The district court was therefore correct that non-preempted state claims have been alleged. It was within the district court's discretion to then remand these state claims once the federal claim upon which removal was based was dismissed. *Swett v. Schenk*, 792 F.2d 1447, 1450 (9th Cir.1986). Therefore, there is no justification for granting the extraordinary remedy of a writ of mandamus.

## VI.

We affirm the district court's treatment of the second cause of action for breach of a covenant of good faith and fair dealing. The district court properly recharacterized appellants' claim as an artfully pled section 301 action and it correctly dismissed the claim as time-barred. We deny the petition for a writ of mandamus relating to the district court's remand of appellants' third through seventh causes of action. The disposition of the first cause of action, for wrongful discharge in violation of California's health and safety laws, is reversed. We hold that the claim for wrongful termination, based on the state's public policy as expressed in its health and safety regulations, is not preempted by section 301 of the LMRA or the NLRA. We remand this claim to the district court with instructions to remand this claim to the California state court, along with the other state claims. Appellants are entitled to recover their costs on the appeal and the petition for mandamus.

AFFIRMED in part, REVERSED in part, and REMANDED.

Petition for a writ of mandamus is DENIED.