224 N.J. Super. 463 (1988)
540 A.2d 1296
VINCENT LEPORE, PLAINTIFF-APPELLANT,
v.
NATIONAL TOOL AND MANUFACTURING COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 2, 1988.
Decided April 11, 1988.
*465 Before Judges PRESSLER, MUIR, Jr. and CONLEY.
Vincent Lepore, appellant, argued the cause pro se and filed pro se brief.
Wayne J. Positan argued the cause for respondent (Lum, Hoens, Abeles, Conant & Danzis, attorneys; Wayne J. Positan and Elizabeth Ard of counsel and on the brief).
Clifford G. Stewart, Assistant Deputy Public Advocate, argued the cause for amicus curiae Public Advocate of New Jersey (Alfred A. Slocum, Public Advocate, attorney; Clifford G. Stewart on the brief).
Public Citizen Litigation Group and Ball, Livingston & Tykulsker, filed a brief amici curiae for A Democratic Union and Public Citizen (Sharon Treat, Paul Alan Levy and Alan B. Morrison, on the brief).
The opinion of the court was delivered by CONLEY, J.S.C. (temporarily assigned).
*466 This is an appeal by a union employee from a summary judgment dismissing his state court retaliatory discharge complaint against his former employer. It raises three significant issues not previously addressed in this State: (1) whether there exists a tort remedy for the discharge of a union employee in retaliation for reporting workplace safety violations to the Occupational Safety and Health Administration; (2) whether state court litigation of such retaliatory discharge is preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (LMRA); (3) whether state court litigation of such retaliatory discharge is preempted by the Occupational Safety and Health Act, 29 U.S.C. § 651 et seq. (OSHA). We hold that an employee under a collective bargaining agreement may seek redress in our courts for a discharge in retaliation for reporting workplace safety violations. We further hold that a tort remedy for such retaliatory discharge is not preempted by either LMRA or OSHA.
Plaintiff was employed by defendant National Tool and Manufacturing Company (hereinafter National) for two years before his discharge in April 1983 and had, prior thereto, received both a merit raise and a contractual increase. In his complaint, the allegations of which must be accepted as true, he alleges that after being on the job for about a year and a half he noticed that defendant's plant was being operated in an unsafe manner and reported the conditions to OSHA. Upon inspection, OSHA found several violations and ordered National to correct them. The complaint further alleges that when National learned plaintiff was the "whistle-blower", it took reprisal action against him, first by demoting him to an inferior position outside his job classification and then discharging him. The collective bargaining agreement then in effect protected an employee such as plaintiff from discharge or discipline without *467 just cause and provided for final and binding arbitration.[1] Plaintiff filed a grievance pursuant to Art. VII of the contract, alleging that his discharge was without just cause.[2] Plaintiff also filed complaints of retaliatory discharge with the National Labor Relations Board and OSHA.[3]
In March 1984 plaintiff filed a complaint in the Law Division seeking compensatory and punitive damages. The complaint asserts that the actions of National in retaliation for reporting OSHA violations contravene both federal and state public policy. National filed a motion to dismiss or, in the alternative, for summary judgment contending the state tort cause of action was preempted by § 301 of LMRA. The motion was initially denied. Following the subsequent decision of the Supreme Court of the United States in Allis-Chalmers v. Lueck, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), National successfully renewed its motion. Concluding that Allis was dispositive, the trial court held § 301 preempted plaintiff's cause of action. The court also concluded that even were there *468 no preemption, contractual binding arbitration would be plaintiff's exclusive remedy.

I
We have not been hesitant in recognizing a common-law tort remedy for an employee whose discharge contravenes state law or public policy. Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58 (1980). This has been particularly so where the discharge is in retaliation for the exercise of state rights and obligations. See Velantzas v. Colgate-Palmolive Co., 109 N.J. 189 (1988) (discharge of at-will employee in retaliation for requesting information relevant to suspected employment discrimination); Lally v. Copygraphics, 173 N.J. Super. 162 (App. Div. 1980), aff'd 85 N.J. 668 (1981) (discharge of at-will employee in retaliation for filing workers' compensation claim); Kalman v. Grand Union Co., 183 N.J. Super. 153 (App.Div. 1982) (discharge of at-will pharmacist in retaliation for keeping pharmacy open contrary to employer's directive but as required by state rules). The question we must address here is whether a discharge in retaliation for reporting workplace safety violations is such a discharge and, if so, whether a tort remedy exists for an employee under a collective bargaining agreement as well as for an at-will employee.
The right of all employees to safe and healthy working conditions is a matter of significant public concern and is guaranteed by both federal and state laws. On the federal level, the Occupational Health and Safety Act of 1970, 29 U.S.C. § 651 et seq., expresses congressional concern over a safe and healthy workplace for all workers. 29 U.S.C. § 651(b). It also reflects an awareness that workplace safety is a matter of substantial local interest as well. Thus, pursuant to 29 U.S.C. § 651(b)(11), states are encouraged "to assume the fullest responsibility for the administration and enforcement of their occupational safety and health laws ..." and are expressly authorized to regulate health and safety of its workers provided *469 that state standards are at least as vigorous as those required under OSHA. 29 U.S.C. § 667; 29 U.S.C. § 667(c)(2).
On the state level, the Legislature has enacted the Worker Health and Safety Act, N.J.S.A. 34:6A-1 et seq., and the New Jersey Public Employees' Occupational Safety and Health Act, N.J.S.A. 34:6A-25 et seq., to ensure safe and healthy work environment. Guaranteeing to every worker the right to a safe place of employment, N.J.S.A. 34:6A-3 provides:
"Every employer shall furnish a place of employment which should be reasonably safe and healthful for employees. Every employer shall install, maintain and use such employer protective devices and safeguards .. . as are reasonably necessary to protect the life, health and safety of employees, with due regard for the nature of the work required."
Indeed, this has long been a right protected by common law. Clayton v. Ainsworth, 122 N.J.L. 160 (E. & A. 1939); Davis v. N.J. Zinc Co., 116 N.J.L. 103 (E. & A. 1936); Burns v. Delaware and Tel. Co., 70 N.J.L. 745 (E. & A. 1904); McDonald v. Standard Oil Co., 69 N.J.L. 445 (E. & A. 1903); Canonico v. Celanese Corp. of America, 11 N.J. Super. 445 (App.Div. 1951), certif. den. 7 N.J. 77 (1951); Shimp v. New Jersey Bell Telephone Co., 145 N.J. Super. 516 (Ch.Div. 1976). Thus, when the Worker and Health Safety Act was enacted, the Legislature was careful to provide that it was not intended to affect in any way "any right or remedy ... existent at common law." N.J.S.A. 34:6A-17.
Unlike its federal counterpart, 29 U.S.C. § 660(c), the New Jersey Worker Health and Safety Act does not expressly prohibit penalizing an employee for filing complaints with either federal or state agencies in pursuance of the right to a safe workplace. However, the New Jersey Public Employees' Occupational Safety and Health Act, enacted in 1983, does expressly prohibit such misconduct. N.J.S.A. 34:6A-45. See also N.J.S.A. 34:5A-42 (prohibiting discrimination against an employee for complaining of violations of the Worker and Community Right to Know Act); N.J.S.A. 34:15-39.1 (prohibiting discrimination against an employee for claiming workers' compensation benefits). *470 And recently the Legislature enacted the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq., which codifies the right of all employees to pursue a state tort claim for action taken in retaliation for reporting violations of law to federal or state authorities or both. In this respect, N.J.S.A. 34:19-3 declares:
"An employer should not take any retaliatory action against an employee because the employee does any of the following:
a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law;
b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer; or
c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
(1) is in violation of a law, or a rule or regulation promulgated pursuant to law;
(2) is fraudulent or criminal; or
(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare..."
Upon a violation, an employee or former employee may file a tort action and may be entitled to an injunction, reinstatement, compensation for lost wages and other benefits, punitive damages and counsel fees. N.J.S.A. 34:19-5. Clearly intended as comprehensive protective legislation, "employee" is broadly defined encompassing both union and nonunion employees. N.J.S.A. 34:19-2(b). Similarly, the definition of public body includes both federal and state entities. N.J.S.A. 34:19-2(c).
Although enacted after the retaliatory discharge here and, thus, not directly applicable, we view this legislation as a reaffirmation of this state's repugnance to an employer's retaliation against an employee who has done nothing more than assert statutory rights and protections and a recognition by the Legislature of a preexisting common-law tort cause of action for such retaliatory discharge. Cf. Lally v. Copygraphics, supra, 85 N.J. at 670.
*471 National claims that since plaintiff reported the workplace safety violation to the federal agency, no state right or public policy is involved. The right to a safe workplace and corresponding right to report violations, however, is wholly independent of to whom a violation might be reported and, as previously set forth, is very much a matter of state concern. The employer's misconduct is the same whether the employee complains to a federal or state agency. Moreover, our concept of public policy has been broadly defined to include all legislation, administrative rules and regulations, and judicial decision, Pierce, supra, 84 N.J. at 72, with no artificial boundaries drawn between federal or state lines. Cf. Allen v. Commercial Casualty Insurance Co., 131 N.J.L. 475, 477-478 (E. & A. 1944).
National further contends that whatever might be the retaliatory discharge tort remedy for an at-will employee, it does not extend to an employee governed by a collective bargaining agreement establishing binding arbitration as the employee's remedy for an alleged unjust discharge. We fully recognize that both state and federal policy favor the use of arbitration where provided under a collective bargaining agreement. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 567-569, 80 S.Ct. 1343, 1346-1347, 4 L.Ed.2d 1403, 1406-1407 (1960); United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1352-1353, 4 L.Ed.2d 1409, 1417-1418 (1960). See also Republic Steel Corp. v. Maddox, 379 U.S. 650, 652-653, 85 S.Ct. 614, 616, 13 L.Ed.2d 580, 583 (1965). See Jorgensen v. Pennsylvania Railroad Co., 25 N.J. 541, 561-562 (1958).
Characterized as a procedure for resolving employment disputes through "a system of private law" designed to comply with the needs and desires of the parties, arbitration is a continuation of the collective bargaining process. United *472 Steelworkers of America v. Warrior and Gulf Navigation Co., supra, 363 U.S. at 581, 80 S.Ct. at 1352, 4 L.Ed.2d at 1416-1417. Functions performed by an arbitrator "are not normal to the courts" and "considerations which help him fashion judgments may indeed be foreign to the competence of the courts". Id. Moreover, an arbitrator ordinarily cannot consider public interest, Thornton v. Potamkin Chevrolet, 94 N.J. 1, 5 (1983), and does not determine violations of law or public policy, cf. Bridgeton Ed. Assoc. v. Bd. of Ed. Bridgeton, 132 N.J. Super. 554, 557 (Ch.Div. 1975).
It is, thus, not surprising that the policy in favor of binding arbitration has not precluded judicial recourse for certain allegations of illegal conduct by an employer. McDonald v. City of West Branch, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984) (violations of civil rights); Alexander v. Gardner  Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (racial discrimination); Barrentine v. Arkansas Best Freight System, Inc., 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (violations of the Fair Labor Standards Act). See also Atchison, Topeka and Santa Fe Railway Co. v. Buell, 480 U.S. ___, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987) (violations of Federal Employees' Liability Act). These cases focus upon the nature of the rights being vindicated through the judicial remedy. Because they are substantive non-waivable rights of all workers, separate and distinct from rights created by the collective bargaining agreement, judicial recourse is permitted notwithstanding the existence of binding arbitration. Cf. Thornton v. Potamkin Chevrolet, supra, 94 N.J. at 5 (arbitration under collective bargaining agreement for alleged racially motivated layoff does not bar administrative complaint with the Division on Civil Rights).
We think the same considerations pertain to the right of a worker in our state to a safe and healthy workplace and the corresponding right to be free from retaliatory action therefor. These rights do not derive from the bargaining process. Firmly grounded in statute and public policy, they are rights applicable *473 to all workers. Resolution of alleged employer misconduct in violation of these rights does not, moreover, implicate any "private law" of the parties to the contract or "considerations which are foreign to the competence of the courts." Rather the trial would simply consist of plaintiff's establishing a prima facie case that he was in fact fired for filing OSHA complaints and National would then have to demonstrate he was fired for another, non-pretextual reason.
Furthermore, we think it evident an at-will employee would have an available tort remedy for a retaliatory discharge for reporting workplace safety violations. We do not think other, perhaps similarly situated, employees should be denied the same remedy simply because they are members of a union. Cf. Herring v. Prince Macaroni of New Jersey, 799 F.2d 120, 123-124 (3rd Cir.1986) ("we think it is unlikely where the [New Jersey] legislature has declared an employment practice unlawful as to all employees, and the courts have recognized an action at law to enforce that declaration, that contractual employees as a class would, or could, be relegated to any remedies provided under their collective bargaining agreements for the selfsame illegal practices").
We consider our decision in Lally v. Copygraphics, supra, 173 N.J. Super. 162 instructive. Plaintiff in Lally alleged a discharge in retaliation for pursuing workers' compensation benefits and sought to litigate her claim in the state court. Much like plaintiff here who has an available arbitration remedy, plaintiff in Lally had an available administrative remedy. In concluding that the availability of such a remedy did not exclude the right of judicial action for compensatory and punitive damages, we said:
"... we regard the policy of the retaliatory discrimination act as one so firmly grounded in the public interest as to require assiduous protection and enforcement. Employer conduct which undermines employee resort to worker's compensation benefits has been characterized by the leading commentator as a matter of "opprobrium" and as employer misconduct which is "particularly repellent" ... We agree and consequently conclude ... that such conduct by an employer constitutes both a public and a private wrong, each of which is entitled to vindication . .." 173 N.J. Super. at 179-180 (citations omitted).
*474 Similarly, in affirming our determination that judicial remedy was not precluded by the existence of the administrative remedy, the Supreme Court viewed a retaliatory discharge for pursuing statutory rights as "wrongful and tortious" for which there existed a common-law cause of action which was "strongly grounded in public policy". 85 N.J. at 670.
No less can be said of the firing of an employee for doing nothing more than exercising his or her statutory right to a safe and healthy workplace. Such employer's conduct, clearly designed to thwart the employee's right to work in a safe and healthy environment, is abhorrent. It is a public wrong because it strikes against the fabric of our laws concerning workplace safety. It is, as well, a private wrong against the individual employee. The remedy, moreover, of reinstatement, available through arbitration, may serve little or no deterrent purpose and may have minimal effect if the employee chooses not to return to an employer who has resorted to such conduct. We therefore conclude that an employee has a common law cause of action for wrongful and tortious retaliatory conduct by the employer which may be pursued in lieu of contractual arbitration. Midgett v. Sackett-Chicago, Inc., 105 Ill.2d 143, 85 Ill.Dec. 475, 478-479, 473 N.E.2d 1280, 1283-1284 (Sup. Ct. 1985), cert. den. 472 U.S. 1032, 105 S.Ct. 3513, 87 L.Ed.2d 642 (1985) (union employee has tort action independent of available arbitration remedy for discharge in retaliation for pursuing workers' compensation benefits). Accord Peabody Galion v. Dollar, 666 F.2d 1309, 1320-1323 (10th Cir.1982), Puchert v. Agsalud, 67 Haw. 25, 677 P.2d 449 (1984), appeal dismissed for want of substantial federal question, Pan American World Airways v. Puchert, 472 U.S. 1001, 105 S.Ct. 2693, 86 L.Ed.2d 710 (1985).

II
National contends any state remedy plaintiff might have is preempted by § 301 of the LMRA, 29 U.S.C. § 185. That statute provides:

*475 "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties ..."
§ 301 does not expressly preempt state regulation in the field of labor law. Neither has Congress exercised its authority to occupy the entire field. Preemption, therefore, arises only when state regulation frustrates the federal policy expressed in § 301 that relationships created by collective bargaining agreements in the private sector should be defined by federal common law. Allis-Chalmers Corp. v. Lueck, 471 U.S. at 209, 211, 105 S.Ct. at 1910-1911, 85 L.Ed.2d at 213-214, 215 (1985). As observed in Allis:
"The interest in interpretive uniformity and predictability that requires that labor  contract disputes be resolved by reference to federal law also requires that the meaning given a contract phrase or terms be subjected to uniform federal interpretation..." 471 U.S. at 211, 105 S.Ct. at 1911, 85 L.Ed.2d at 215.
Accordingly, those disputes which must be resolved under federal common-law arise under and relate to the intended meaning and interpretation of labor clauses together with the consequences of their breaches. It is only those disputes which are preempted by § 301.
Private parties to collective bargaining agreements, however, do not have the power through § 301 to "preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." Allis, 471 U.S. at 212, 105 S.Ct. at 1912, 85 L.Ed.2d at 216. Thus § 301 does not preempt "every dispute concerning employment or tangentially involving a provision of a collective  bargaining agreement". Id. 471 U.S. at 211, 105 S.Ct. at 1911, 85 L.Ed.2d at 215. And those state laws proscribing conduct or establishing rights and obligations that exist independently of private agreements and that can not be waived or altered by agreement of private parties are not preempted. Id., 471 U.S. at 212, 105 S.Ct. at 1912, 85 L.Ed.2d at 216. Cf. Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 756, 105 S.Ct. 2380, 2398, 85 L.Ed.2d 728, 751 (1985) (federal labor law "interstitial, supplementing state *476 law [including state laws affecting occupational health and safety] where compatible, and supplanting it only where it prevents the accomplishment of the purpose of the federal act").
Whether § 301 will preempt a state law claim, thus, must depend upon an analysis of the particular claim and its relationship to and dependence upon terms of the contract. In Allis, for example plaintiff filed a state tort cause of action for bad-faith handling of an insurance claim. The claim, however, arose under a disability plan included in the collective bargaining agreement. The allegation of bad-faith handling depended upon an interpretation of the contract concerning the intended manner of handling claims and whether the employer's conduct complied with what the parties had intended at the time the disability plan was negotiated. Plainly, the state tort claim involved a right created by contract and was inextricably intertwined with considerations of terms of the contract and intention of the parties. It was, therefore, preempted. See also International Brotherhood of Electrical Workers, AFL-CIO v. Hechler, 481 U.S. ___, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987) (state tort claim of breach by union of its alleged contractual duty to provide employee with safe workplace was dependent upon interpretation of collective bargaining contract to ascertain existence of a duty, its nature and extent, and therefore was preempted by § 301).
In contrast, the right of employees to a safe workplace and the corresponding right to report violations are grounded in state and federal law. They are rights held by all workers independent of any collective bargaining agreement. Providing a judicial forum for the vindication of these rights does no violence to the balance between labor and management achieved through collective bargaining. And a claim of retaliatory action taken against the exercise of those rights requires no analysis or interpretation of any terms of the collective bargaining agreement.
*477 We recognize the contract does have a "for-cause" discharge clause which includes a provision for binding arbitration. Facially a retaliatory discharge of the type here could be considered a "not-for-cause" discharge and thus within the binding arbitration provision of the contract. Yet plaintiff's claim of retaliatory discharge does not in any way turn even tangentially upon an interpretation of either the "for-cause" contractual clause or any other clause in the contract. There has been no claim by National for instance, that a retaliatory discharge could be considered "for-cause" under the contract. Moreover, as previously indicated, at trial plaintiff will attempt to present a prima facia case that he was fired for reporting the workplace safety violations and in its defense National Tool will attempt to demonstrate an other non-pretextual reason. Whatever that other reason might be, however, there will be no need to determine whether it constitutes a "for-cause" discharge under the contract.
Providing plaintiff with a state tort remedy, thus, will do no harm to the private interests of the parties to the collective bargaining agreement or to the policy of § 301 that disputes involving those interests should be resolved under uniform federal common law. It will, on the other hand, give full recognition to the strong state policy against penalizing an employee's efforts to exercise safe workplace rights.
Preemptive effect of § 301 in the context of discharges in retaliation for the exercise of state rights has been the subject of numerous federal decisions. State tort remedies have been held not preempted by the following: Paige v. Henry J. Kaiser Co., 826 F.2d 857 (9th Cir.1987) (discharge in retaliation for refusing to perform work in violation of state OSHA standards); Baldracchi v. Pratt & Whitney Aircraft Div., 814 F.2d 102 (2nd Cir.1987) cert. denied, ___ U.S. ___, 108 S.Ct. 2819, ___ L.Ed.2d ___ (discharge in retaliation for filing a workers' compensation claim); Herring v. Prince Macaroni of N.J. Inc., 799 F.2d 120 (3rd Cir.1986) (discharge in retaliation for filing workers' compensation claim); Garibaldi v. Lucky Food Stores, Inc., 726 F.2d 1367 (9th Cir.1984), cert. den. 471 U.S. 1099, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985) (discharge in retaliation *478 for reporting adulterated milk to local health department); Peabody Galion v. Dollar, 666 F.2d 1309 (10th Cir.1981) (discharge in retaliation for filing workers' compensation claim); Sutton v. Southwest Forest Industries, 643 F. Supp. 662 (D.Kansas 1986) (discharge in retaliation for workers' compensation claim); Orsini v. Echlin, Inc., 637 F. Supp. 38 (N.D. Ill. 1986) (discharge in retaliation for workers' compensation claim); Benton v. Kroger Co., 635 F. Supp. 56 (S.D.Texas 1986) (discharge in retaliation for workers' compensation benefits). See also LaBuhn v. Bulkmatic Transport Co., 644 F. Supp. 942 (N.D.Ill. 1986) (discharge in retaliation for exercise of contractual grievance rights preempted, discharge in retaliation for unsafe workplace complaint not preempted). Cf. Pan American World Airways v. Puchert, 472 U.S. 1001, 105 S.Ct. 2693, 86 L.Ed.2d 710 (1985) (dismissing for want of substantial federal question appeal from decision of Supreme Court of Hawaii, Puchert v. Agsalud, 67 Haw. 25, 677 P.2d 449 (1984) that discharge in retaliation for workers' compensation claim not preempted by the Railway Labor Act).
Focusing upon the particular retaliatory tort of discharge for workers' compensation claims, for example, the court said in Baldracchi:
"In contrast to the tort in Allis-Chalmers, Baldracchi's suit is independent of the collective bargaining agreement. Her claim of retaliation for filing a workers' compensation claim does not turn on interpretation of that agreement. At trial, Baldracchi would have to present a prima facie case that she was in fact fired for filing a workers' compensation claim. See 2A A. Larson, The Law of Workmen's Compensation 68.36(c) (1986). In its defense, Pratt & Whitney would have to demonstrate that Baldracchi was fired for another, non-pretextual reason." 814 F.2d at 105.
Although decided before Allis, Garibaldi similarly analyzed the nature of the claim involved:
"Garibaldi's "whistle blowing" to protect the health and safety of the citizens of California is exactly the type of conduct that the California Supreme Court protected in Tameny [v. Atlantic Richfield Co., 27 Cal.3d 167, 164 Cal. Rptr. 839, 610 P.2d 1330 (1980)]. The Supreme Court's decision in Farmer [v. United Brotherhood of Carpenters and Joiners, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 388 (1977)] rested explicitly on the "State's interest in protecting the health and well-being of its citizens." 430 U.S. at 303, 97 S.Ct. at 1065. See also Malone v. White Motor Corp., 435 U.S. 497, 513 n. 13, 98 S.Ct. 1185, *479 1194 n. 13, 55 L.Ed.2d 443 (1978); Teamsters Union v. Oliver, 358 U.S. 283, 297, 79 S.Ct. 297, 305, 3 L.Ed.2d 312 (1959).
Garibaldi's allegation that he was discharged in violation of public policy comports with the limitations of the Farmer holding. As in Farmer, Garibaldi's claim is a "function of the ... manner" in which the conduct was exercised "rather than a function of the ... [conduct] itself." 430 U.S. at 305, 97 S.Ct. at 1066. In contrast, if Garibaldi had alleged that he was terminated in violation of the collective bargaining contract, or, based on Cleary v. American Airlines [111 Cal. App.3d 443, 168 Cal. Rptr. 722 (1980)], in violation of an implied covenant not to terminate without cause, the result might be otherwise." 726 F.2d at 1374-1375.
The recent decision of the Ninth Circuit in Paige reflects a like analysis. In Paige employees were fired for refusing to fill generator gas tanks under circumstances creating hazardous conditions in violation of the state occupational and safety act. They filed a state court complaint alleging in part wrongful discharge in violation of the state OSHA and wrongful discharge in violation of an implied covenant of good faith and fair dealing. Recognizing that the latter claim depended entirely upon terms and conditions of the collective bargaining agreement, the court found that claim preempted. On the other hand, the claim of wrongful discharge in violation of state OSHA was not preempted. That claim arose from alleged violations of state statutes and public policy. As the court noted:
"... California's OSHA regulations protect all workers, irrespective of any labor agreement. State health and safety standards benefit all employees as individual workers, not because they are or are not members of a collective bargaining association. And California's interest in providing this private cause of action is the enforcement of the underlying statute or policy, not to regulate the employment relationship ..." 826 F.2d at 863.
Thus, a claim of retaliatory discharge similar to the type of claim involved in this case was found not preempted.
National relies upon Lingle v. Norge Div. of Magic Chef, Inc., 823 F.2d 1031 (7th Cir., 1987), cert. granted, ___ U.S. ___, 108 S.Ct. 226, 98 L.Ed.2d 185 (1988), and Johnson v. Hussmann Corp., 805 F.2d 795 (8th Cir.1986), both of which held § 301 preempts a state tort cause of action for discharge in retaliation for filing workers' compensation claim. Viewing such claims as claims for wrongful discharge under the collective bargaining agreement, both courts concluded they were *480 substantially dependent upon an analysis of the just-cause provision in the contract. 823 F.2d at 1046. As observed by the dissent in Lingle, however;
"... Not only does the court ignore the grey areas on the legal landscape, but it even refuses to draw a "black and white" line between federal and state authority. Instead, it opts, as a practical matter, for a single-colored portrait of absolute federal authority ..." 823 F.2d at 1051
Nothing in § 301 supports "absolute federal authority", and we concur with the further observations of the dissent that:
"... the majority simply fails to realize that Allis-Chalmers requires a far more focused analysis than the one undertaken by the court. We are not asked in this case to determine whether all state law claims for wrongful discharge are within the preemptive ambit of § 301. In analyzing the preemptive effect of § 301, the general tort of wrongful discharge must be distinguished from the tort of retaliatory discharge for having sought the protection of a state's workers' compensation scheme. In the general wrongful discharge claim, the cause of action may well be premised on activity directly covered by the collective bargaining agreement.... However, in the present retaliatory discharge claim, the cause of action arises from the state's important public policy interest-independent of the collective bargaining agreement-in preserving its worker's compensation system." 823 F.2d at 1053.
We agree that the analysis required under Allis was not conducted in Lingle. Neither was it conducted in Johnson. We decline to follow their precedence.
We do not suggest that all complaints labelled wrongful discharge should escape preemption. Thus, in McQuitty v. General Dynamics Corp., 204 N.J. Super. 514 (App.Div. 1985), we noted that the particular claim of wrongful discharge based upon an alleged violation of a written or oral labor contract should have been brought under § 301 and resolved by reference to federal law. 204 N.J. Super. at 520. Although dictum, that observation was entirely consistent with Allis since the claim of breach of employment agreement derived wholly from terms and conditions of plaintiff's employment, express or implied, a resolution of which depended upon analysis of those terms and conditions.[4] It is this type of wrongful discharge *481 which is characterized in Allis as being traditionally resolved through contractual arbitration. 471 U.S. at 219, 105 S.Ct. at 1915, 85 L.Ed.2d at 251. See also Bale v. General Telephone Co. of Calif., 795 F.2d 775 (9th Cir.1986) (claims for breach of oral contract and negligent misrepresentation at time of hiring preempted); Olguin v. Inspiration Consolidated Cooper Co., 740 F.2d 1468 (9th Cir.1984) (claims for breach of contract and discharge without just or progressive discipline preempted).
Neither do we suggest that all claims of retaliatory discharge escape preemption. See DeSoto v. Yellow Freight Systems, 811 F.2d 1333 (9th Cir.1987) (retaliatory discharge for refusal to operate a trailer with expired registration and vehicle plate preempted where no state statute, regulation or policy involved); Olguin v. Inspiration Consolidated Cooper Co., supra, 740 F.2d 1468 (retaliatory discharge for reporting safety complaints preempted where no state laws, regulation or policies are involved).
But whatever Congress may have intended with respect to federal rights and preemption, it clearly did not intend preemption to apply to a retaliatory discharge claim that is based upon independent state rights and obligations, the judicial resolution of which will not require analysis of any contractual terms or conditions and which will do no violence to the collective bargaining process. Plaintiff's allegation that he was discharged because he exercised his state right to report workplace safety violations is such a claim. It is our conclusion that it is not preempted by § 301.

III
National's final contention is that plaintiff's complaint is preempted by the federal Occupational Safety and Health Act, 29 U.S.C. § 651 et seq. Since this issue was not considered by the trial court, we need not address it. E.g. Skripek v. Bergamo, 200 N.J. Super. 620, 629 (App.Div. 1985), certif. den. 102 N.J. 303 (1985). In any event, we find no merit to it.
*482 OSHA does not reflect express congressional intent to preempt the field of occupational safety and health. To the contrary, as previously indicated, OSHA specifically permits individual states to adopt a scheme of health and safety regulations along with enforcement procedures so long as such standards are at least as vigorous as those required by OSHA and have been approved by the Secretary of Labor, 29 U.S.C. § 667(b), (c). Beyond that, OSHA gives states express authority to regulate areas of health and safety not governed by an OSHA standard. 29 U.S.C. § 667(a). Thus, preemption under OSHA arises only where a state law or regulation concerns an occupational safety and health matter governed by a specific federal standard and only where an approved state plan is not in effect. See N.J. State Chamber of Commerce v. Hughey, 774 F.2d 587, 593 (3rd Cir.1985).
National argues that this limited form of preemption under OSHA extends to a state tort remedy for retaliatory discharge because OSHA contains a prohibition against such discharge, an administrative remedy therefor, and authorizes the Secretary to bring enforcement proceedings in federal district court. In this respect, 29 U.S.C. § 660(c)(1) and (2) provide:
"(1) No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this Act.
(2) Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination. Upon receipt of such complaint, the Secretary shall cause such investigation to be made as he deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person. In any such action the United States district courts shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay."
OSHA, thus, does prohibit retaliatory discharges and establishes enforcement procedures encompassing a remedy therefor. *483 It does not, however, by its express terms prohibit a state from providing an aggrieved employee an alternative remedy. To the contrary, permitting an employee to pursue a state tort remedy is entirely consistent with the overall congressional intent of encouraging states to "assume the fullest responsibility for the administration and enforcement of their occupational safety and health laws...." 29 U.S.C. § 651(b)(11). See Cerracchio v. Alden Leeds Incorporated, 223 N.J. Super. 435 (App. Div. 1988) (holding OSHA does not preclude an employee from pursuing a tort action for a retaliatory discharge). See Kilpatrick v. Delaware County Soc., 632 F. Supp. 542, 548 (E.D.Pa. 1986). Cf. Paige v. Henry J. Kaiser Co., supra, 826 F.2d at 864.
National argues a different result is required by Taylor v. Brighton Corp., 616 F.2d 256 (6th Cir.1980) and Wolk v. Saks Fifth Ave. Inc., 728 F.2d 221 (3rd Cir.1984). Both cases are inapposite.
In Taylor, plaintiff filed a complaint of retaliatory discharge with OSHA pursuant to 29 U.S.C. § 660(c)(2). The Secretary of Labor investigated and determined not to file suit. Plaintiff then filed his own suit in federal court alleging a discharge in violation of § 660(c)(1). Based upon an analysis of the congressional history on § 660, the court concluded Congress did not intend that it be enforced by private parties. Thus, only the Secretary of Labor is authorized to file a complaint alleging a violation of § 660(c)(1). Accord McCarthy v. Bark Perking, 676 F.2d 42 (2nd Cir.1982), vacated and remanded on other grounds, 459 U.S. 1166, 103 S.Ct. 809, 74 L.Ed.2d 1010 (1983); King v. Fox Grocery Co., 642 F. Supp. 288 (W.D.Pa. 1986); Holmes v. Schneider Power Corp., 628 F. Supp. 937 (W.D.Pa. 1986), aff'd 806 F.2d 252 (3rd Cir.1986).
The complaint here, however, does not seek to remedy a violation of OSHA. Rather, as discussed previously, plaintiff seeks to remedy a retaliatory discharge in violation of state laws and public policy. It is entirely distinct from a § 660(c)(1) private cause of action. See Holmes v. Schneider Power Corp., supra, 628 F. Supp. at 939 (drawing a similar distinction *484 but finding no state common law cause of action for retaliatory discharge). See also Kennard v. Zimmer, 632 F. Supp. 635 (E.D.Pa. 1986).
Wolk v. Saks Fifth Ave. Inc., supra, 728 F.2d 221, is similarly inapposite. Based on Pennsylvania law, the Third Circuit affirmed a dismissal of plaintiff's wrongful discharge complaint because there existed an available state administrative remedy. As construed by the Third Circuit, under that state's wrongful discharge law, a common law cause of action exists only where the employee has no available statutory remedy. Our wrongful discharge law, on the other hand, contains no such limitation. Moreover, Wolk simply does not address the issue of OSHA preemption.
We find nothing in OSHA either express or implied that requires preemption of plaintiff's common law cause of action. Kilpatrick v. Delaware County Soc., supra, 623 F. Supp. at 549. National's contention that plaintiff's claim is preempted, thus, is rejected.

IV
For the reasons set forth in this opinion, we reverse the dismissal of plaintiff's complaint and remand for further proceedings.

ADDENDUM
We previously noted at p. 479 that the Supreme Court of the United States granted certiorari in Lingle v. Norge Div. of Magic Chef, Inc., 823 F.2d 1031 (7th Cir.1987). On June 6, 1988, subsequent to the filing of our opinion, the Supreme Court reversed the Court of Appeals decision in Lingle and held § 301 of the LMRA, 29 U.S.C. § 185, does not preclude an employee covered by a collective bargaining agreement from pursuing a state tort remedy for discharge in retaliation for filing a workers' compensation claim. Lingle v. Norge Division of Magic Chef, Inc., ___ U.S. ___, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). This principle applies equally to a discharge in retaliation for reporting workplace safety violations.
NOTES
[1] In this respect, Art. VII of the contract provided:

"1. The Company shall not discharge, discipline or suspend any employee (other than probationary employees) covered by this Agreement without just cause. Before any employee covered by this Agreement shall be disciplined, suspended or discharged, there shall be a notice given to the Union steward, and a copy forwarded to the Union.
2. A grievance by an employee claiming that he has been unjustly disciplined or discharged must be submitted to the Company in writing within three (3) days of discharge, suspension or discipline; otherwise, the same will be considered to have been made for just cause.
3. All warnings must be given in writing. A copy of such warning shall be given to the employee and the Union. If no grievance is written to dispute the warning within three (3) days of action, it will be assumed that the warning is justified."
[2] Arbitration proceedings were begun but not completed, having been adjourned at plaintiff's request pending this appeal. As a result of our opinion, plaintiff's state court complaint will be reinstated. We would expect him to abandon his arbitration remedy.
[3] Action on these complaints has been deferred pending completion of the arbitration proceedings.
[4] Plaintiff in McQuitty also claimed retaliatory discharge for filing a workers' compensation claim. That part of the complaint was not dismissed by the trial court and thus was not involved in the appeal. See 204 N.J. Super. at 518. Our discussion of the preemptive effect of § 301, therefore, relates only to the claim of breach of contract.