239 N.J. Super. 213 (1990)
570 A.2d 1289
EDWARD MAHER, PLAINTIFF-APPELLANT,
v.
NEW JERSEY TRANSIT RAIL OPERATIONS, INC., AND BROTHERHOOD OF RAILROAD SIGNALMEN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 18, 1989.
Decided March 9, 1990.
*216 Before Judges J.H. COLEMAN, BRODY and MUIR, Jr.
Sanford R. Oxfeld argued the cause for appellant (Oxfeld, Cohen, Blunda, Friedman, Le Vine & Brooks, attorneys; Sanford R. Oxfeld of counsel and on the brief).
Harriet Heuer Miller, Deputy Attorney General, argued the cause for respondent New Jersey Rail Operations, Inc. (Peter N. Perretti, Jr., Attorney General of New Jersey, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel; Harriet Heuer Miller on the brief).
Timothy R. Hott argued the cause for respondent Brotherhood of Railroad Signalmen (Hott & Margolis, attorneys; Timothy R. Hott of counsel and on the brief).
The opinion of the court was delivered by COLEMAN, J.H., P.J.A.D.
The issue raised in this appeal is whether federal preemption precludes plaintiff, a railway worker, from proceeding in State court with state law claims for alleged handicap and retaliatory discharge discrimination in employment. The trial judge found that all of plaintiff's state law claims involved "minor disputes" and were therefore preempted. Summary judgments were granted dismissing the complaint. We hold that state law claims of employment discrimination are not preempted unless determination of the state law claims requires interpretation of the collective bargaining agreement (CBA). We now affirm in part and reverse in part.
*217 For some time prior to 1987, plaintiff was employed by defendant New Jersey Transit Rail Operations, Inc. (N.J. Transit) as a signalman. He was a member of defendant Brotherhood of Railroad Signalmen Union (BRS). A CBA existed between N.J. Transit and BRS. On December 17, 1987, plaintiff was fired.
Plaintiff instituted the present litigation on January 27, 1988. In the first count of the complaint, plaintiff alleges that N.J. Transit violated the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq. This contention is based on plaintiff's assertion that he was fired because he blew the whistle on his supervisor. In the third count of the complaint, plaintiff alleges that N.J. Transit violated New Jersey's Law Against Discrimination, N.J.S.A. 10:5-1 et seq., because of his visual disability. Under these two counts, plaintiff sought reinstatement to his former position with full benefits, compensatory and punitive damages. In addition, plaintiff alleges in the second count that the BRS breached its duty of fair representation of him and he also sought compensatory and punitive damages. On February 17, 1989 summary judgments were entered dismissing all three counts of the complaint. This appeal followed.

I
The facts essential to our decision are not in dispute. William French, the supervisor of the Signal Department, was plaintiff's supervisor until February 1984. Suspecting that French was cheating on his employer, plaintiff retained the services of a private investigator in June 1984 to follow French. The investigation revealed that French was not at his place of employment during all the hours he was paid to work and that he was drinking and playing golf during working hours. When plaintiff's information was turned over to the N.J. Transit Police, it conducted its own investigation. Plaintiff also gave a statement in August 1984 outlining certain misconduct by *218 French consisting of drinking alcohol on the job, playing golf on company time, and dispensing overtime work to friends only. Ultimately, French was dismissed. Plaintiff alleges in his complaint that he has been harassed and terminated in retaliation for blowing the whistle on French.
Further, plaintiff claims handicap discrimination based on certain events that transpired after he was diagnosed in 1984 as being legally blind in his right eye. He was shot in the eye in 1969 with a BB gun in an incident unrelated to his work. This injury caused a loss of central vision in that eye. Even though N.J. Transit became aware of plaintiff's legal blindness of the right eye in 1984, if not sooner, he was not required to wear safety glasses at work prior to July 1986 because the side shields in safety glasses obstructed his peripheral vision, the only useful vision that remained in that eye. Consequently, plaintiff worked without safety glasses between the time the diagnosis of legal blindness was made in 1984 and March 1985. Between March 1985 and March 1986, plaintiff took a leave of absence from work for reasons unrelated to his visual disability. Three months after plaintiff had returned to work in March 1986, some weed killer residue entered his eyes on the job. This incident which occurred during the week of June 30, caused chemical conjunctivitis.
Plaintiff was out of work a few weeks due to the chemical irritation to the eyes. He returned to work on or about July 22, 1986 with a slip from Dr. Allan W. Goldfender requesting light duty for him because of the chemical irritation of his eyes. However, no light work was obtained and plaintiff did not resume work. In September 1986 plaintiff attempted to return to his job as a signalman. At that time, if not sooner, he was informed that he would have to begin wearing safety glasses as required by the N.J. Transit Maintenance of Way Department Safety Rule 15 (Rule 15). That rule, in pertinent part, provides, "An employee blind or practically blind in the eye must wear protective glasses at all times while on company property." This rule was in effect prior to 1984.
*219 Plaintiff filed a grievance on January 9, 1987 pursuant to Rule 4-K-1(a) of the CBA because he was not permitted to resume his employment as a signalman. Thereafter, attempts were made to resolve the conflict pursuant to the CBA. Ultimately, representatives from BRS and from N.J. Transit reached an agreement whereby plaintiff would be assigned to the Third Trick Trouble Desk position, which we understand is an inspector's type of job in The Signal Department. By the terms of the agreement, plaintiff was required to wear the safety glasses specifically made for him by the employer which included side vents. This special agreement was made pursuant to Rule 3E-1(a) of the CBA. Under the special agreement, plaintiff was required to report back to work within ten days after receipt of notification mailed to him on September 18, 1987.
On September 29, 1987, plaintiff's private attorney rejected the settlement. On October 21, 1987, however, that same attorney informed N.J. Transit he had advised plaintiff to return to work and that plaintiff no longer wanted the BRS to represent him. On December 17, 1987, plaintiff was discharged from N.J. Transit's employment following a hearing after he failed to report to work at the Third Trick Trouble Desk. The discharge was allegedly for insubordination pursuant to General Rule D of the CBA. Less than six weeks later, the present litigation was commenced.
The trial judge granted summary judgments dismissing the complaint after concluding that plaintiff's complaint is an artfully drawn wrongful discharge claim. He concluded wrongful discharges of railway workers constitute "minor disputes" and that all of plaintiff's state law claims are preempted by the Federal Railway Labor Act (RLA). The trial court relied on Gonzalez v. Northwest Airlines, Inc., 201 N.J. Super. 422, 427, 493 A.2d 547 (App.Div. 1985). There we stated "Wrongful discharges constitute `minor disputes' under the CBA subject to final, binding, mandatory arbitration under the RLA." Ibid.

*220 II
On this appeal, plaintiff contends his claims of retaliatory discharge and handicap discrimination are state law claims that are independent of federal law and are not preempted by the RLA. Stated differently, plaintiff contends his claim of handicap discrimination and his claim of retaliatory discharge as a whistle blower are independent of the CBA because State law prohibits such discrimination even in the absence of the CBA. N.J. Transit counters by asserting that because plaintiff is a railway employee, his exclusive remedy is confined to § 153 of the RLA which, according to N.J. Transit, deprives the State court of jurisdiction. It is true that § 153 of the RLA establishes an elaborate system of mandatory and exclusive arbitration of work-related disputes. A Railway Adjustment Board (Board) is the final step in this dispute resolution procedure. It is also true that an employee may appeal the Board's final decision to the federal district court. See 45 U.S.C.A. § 153 First (q). But the inquiry cannot end there.

A
In many instances, a plaintiff may not invoke federal jurisdiction where his cause of action relies exclusively on state law in matters of employment relations. See Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 7-12, 103 S.Ct. 2841, 2845-2848, 77 L.Ed.2d 420, 429-432 (1983). But where the federal "complete preemption" doctrine is applicable, a plaintiff may not rely exclusively on state law. 463 U.S. 1 at 22-24, 103 S.Ct. at 2853-2854, 77 L.Ed.2d at 438-440. When an area of state law has been completely preempted, "any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Caterpillar Inc. v. Williams, 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318, 328 (1987).
Generally, there are three types of federal preemption in the field of labor relations: (1) supremacy clause preemption, *221 where the validity of a state statute or regulation is attacked as violative of the Supremacy Clause, in a case properly before either a state or federal court; (2) claim or choice of law preemption, which means only federal law is to be applied even though both the state and federal courts have concurrent jurisdiction; and (3) choice of forum preemption, which is jurisdictional, because it goes to whether the state court has any adjudicatory power. Miller v. Norfolk & Western Ry. Co., 834 F.2d 556, 560-561 (6th Cir.1987). In the present case, the RLA preempts a state law claim, under certain circumstances discussed later, under a choice of forum analysis. Id. at 561. In other words, because plaintiff is a railway employee, "[T]he question is whether the state claim is preempted by the exclusive jurisdiction of the [Railway Adjustment Board] to the exclusion of any court, state or federal." Id.

B
State statutes which establish rights independent of rights provided in a CBA are not necessarily preempted by the RLA or § 301 of the Labor Management Relations Act. "Although the analysis of the question under each statute is quite distinct, the theory running through these cases is that notwithstanding the strong policies encouraging arbitration, `different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers.'" Atchison, Topeka & Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 565, 107 S.Ct. 1410, 1415, 94 L.Ed.2d 563, 572-573 (1987) (employee's right to bring Federal Employers' Liability Act (FELA) action for personal injury damages not barred by RLA); accord Lingle v. Norge Div. Magic Chef, Inc., 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410, 422-423 (1988); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211-213, 105 S.Ct. 1904, 1911-1912, 85 L.Ed.2d 206, 215-217 (1985) (state law claim preempted by LRMA § 301 where state bad faith tort law did not confer rights independent of CBA); Colorado Anti-Discrimination Comm'n v. Continental *222 Air Lines, Inc., 372 U.S. 714, 724, 83 S.Ct. 1022, 1027, 10 L.Ed.2d 84, 91 (1963) (state statute prohibiting racial discrimination in employment not preempted by the RLA). Our ultimate conclusion must reflect "the basic assumption that Congress did not intend to displace [all] state law [claims]." Maryland v. Louisiana, 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576, 595 (1981).
To be sure, "[a]n employer cannot simply hide behind the arbitration provisions of a collective bargaining agreement to bypass his or her employees' statutory right not to be discriminated against." McCall v. Chesapeake & Ohio Ry. Co., 844 F.2d 294, 300 (6th Cir.), cert. den. ___ U.S. ___, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). New Jersey clearly has an interest in regulating employment discrimination. Jansen v. Food Circus Supermarkets, Inc., 110 N.J. 363, 373, 541 A.2d 682 (1988); Fuchilla v. Layman, 109 N.J. 319, 334, 537 A.2d 652, cert. den. University of Medicine & Dentistry v. Fuchilla, ___ U.S. ___, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988); Thornton v. Potamkin Chevrolet, 94 N.J. 1, 6, 462 A.2d 133 (1983); Andersen v. Exxon Co., 89 N.J. 483, 492, 446 A.2d 486 (1982); Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 80, 389 A.2d 465 (1978). In a somewhat different context, we have held that the right not to be discriminated against conferred by statute or regulation is not subject to arbitration. Teaneck Bd. of Ed. v. Teaneck Teachers Ass'n., 185 N.J. Super. 269, 448 A.2d 487 (App.Div. 1982), aff'd 94 N.J. 9, 462 A.2d 137 (1983). Moreover, a railway worker has already succeeded on a state law claim against a railroad for racial discrimination in employment, but the record does not reveal whether a RLA claim was raised as a defense. See Jackson v. Consolidated Rail Corp., 223 N.J. Super. 467, 538 A.2d 1310 (App.Div. 1988).
Given New Jersey's strong public interest in eradicating employment discrimination on one hand, and the federal interest in regulating labor management relations in the nation's railways and airlines on the other hand, an appropriate balance *223 must be struck between both competing interests. The proper test to be applied is to be derived from a plethora of federal authority and a few state precedents. Our State courts, however, have not addressed the issue in any definitive way.
We begin with the RLA. The mandatory and exclusive dispute resolution procedures established in 45 U.S.C.A. § 153 (First) (i) are designed to resolve "minor disputes." "Minor disputes" are those "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C.A. § 153 (First) (i); Miller, 834 F.2d at 561. Miller in large part relied on Andrews v. Louisville & Nashville R. Co., 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). In Andrews an employee filed a state wrongful discharge claim based on the CBA. The Court held that where a railway employee alleges wrongful discharge based on the CBA, a minor dispute is raised and the claim must be submitted to the mandatory and exclusive dispute resolution procedures established in 45 U.S.C.A. § 153. Id. at 321-324, 92 S.Ct. at 1563-1565, 32 L.Ed.2d at 97-99; accord Gonzalez v. Northwest Airlines, Inc., 201 N.J. Super. at 427, 493 A.2d 547; Evans v. Southern Pac. Transp. Co., 262 Cal. Rptr. 416, 421, 213 Cal. App.3d 1378, 1386 (2nd Dist. 1989). Preemption was clear in the foregoing cases because the wrongful discharge claims were based on the CBA and hence required interpretation of it.
Recently, the Supreme Court held that "an application of state law is preempted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement." Lingle v. Norge Div. Magic Chef, Inc., 486 U.S. at 413, 108 S.Ct. at 1885, 100 L.Ed.2d at 423. Although McCall, supra, was decided two months prior to Lingle, it applied essentially the same standard in a RLA case as Lingle applied in a § 301 case. The issue in McCall was "whether a state anti-discrimination statute can be preempted by the federal act [RLA]." McCall, 844 F.2d at 298. McCall held a state law claim alleging handicap discrimination *224 in employment was preempted by the RLA "`based on a matrix of facts which are inextricably intertwined with the grievance machinery of the collective bargaining agreement and of the R.L.A.'" McCall at 301.
Although Lingle did not involve the RLA, its language is instructive in our endeavor to decide when § 153 of the RLA preempts a state law claim based on employment discrimination. Lingle instructs that as long as the state law claim does not require interpretation of the CBA itself,
the mere fact that a broad contractual protection against discriminatory  or retaliatory  discharge may provide a remedy for conduct that coincidentally violates state law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract. For even if an arbitrator should conclude that the contract does not prohibit a particular discriminatory or retaliatory discharge, that conclusion might or might not be consistent with a proper interpretation of state law. In the typical case a state tribunal could resolve either a discriminatory or retaliatory discharge claim without interpreting the "just cause" language of a collective-bargaining agreement. [Lingle, 486 U.S. at 413, 108 S.Ct. at 1885, 100 L.Ed.2d at 423]
Additional helpful language is found in Miller v. AT & T Network Sys., 850 F.2d 543 (9th Cir.1988), which is also a § 301 case. The court in Miller observed:
The mere fact that a CBA contains terms that could govern the same situations that a state law governs does not necessarily mean that the state law requires interpretation of the terms in the CBA. The state law might impose mandatory requirements to which all employment contracts in the state must adhere. If mere overlap were permitted to preempt state law, section 301 would begin to dictate the "substance of what private parties may agree to in a labor contract." [Quoting Allis-Chalmers, 471 U.S. at 211, 105 S.Ct. at 1911]
* * * * * * * *
In deciding whether a state law is preempted under section 301, therefore, a court must consider: (1) whether the CBA contains provisions that govern the actions giving rise to a state claim, and if so, (2) whether the state has articulated a standard sufficiently clear that the state claim can be evaluated without considering the overlapping provisions of the CBA, and (3) whether the state has shown an intent not to allow its prohibition to be altered or removed by private contract. A state law will be preempted only if the answer to the first question is "yes," and the answer to either the second or third is "no." [Footnote omitted; Miller, 850 F.2d at 547-548]
Consequently, we reject N.J. Transit's argument that the RLA completely preempts any state law claim for employment *225 discrimination because of the mandatory and exclusive arbitration procedure established in § 153 (First) (i). While such a bright line rule would make a judge's job easier, it would create an injustice to railway and airline workers. Instead, we hold that because of § 153 (First) (i) provisions, employment discrimination claims based on state law are not preempted unless disposition of the state law claim requires interpretation of the CBA. If it does, then the claim is inextricably intertwined with the CBA. See also Quinn v. Southern Pacific Transp. Co., 76 Or. App. 617, 623-624, 711 P.2d 139, 144 (1985) (holding that a state law claim of disability discrimination was not preempted by the RLA because resolution of the issue did not depend on interpretation of the CBA). As Lingle and Miller make clear, the fact that the same evidence may be advanced in the arbitration proceedings as well as before the state tribunal is not dispositive. The test is whether the state claim is truly independent of the CBA and where it is, proceeding before a state tribunal does not impermissibly intrude upon the collective bargaining process. Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 21-22, 107 S.Ct. 2211, 2222-2223, 96 L.Ed.2d 1, 17-18 (1987); Ackerman v. Western Elec. Co., Inc., 860 F.2d 1514, 1517 (9th Cir.1988).

III
When the foregoing legal principles are applied to plaintiff's state law claim of handicap discrimination, we conclude that predicated on the matrix of facts, the state law claim is inextricably intertwined with interpreting the CBA. We emphasize that plaintiff's handicap discrimination claim is a minor dispute not because resolution of the state law claim would require addressing precisely the same set of facts, but because resolution of the State law claim can only be achieved in this case by interpreting the CBA. Hence, it cannot be said that the handicap discrimination State law claim is independent of the CBA. See Lingle, 486 U.S. at 408, 108 S.Ct. at 1883, 100 L.Ed.2d at 421.
*226 This conclusion finds support in the record. The transfer of plaintiff to the Third Trick Trouble Desk implicates Rule 3-E-1(a) and (b) of the CBA. Subsection (a) permits a transfer of a "disabled employee ... to any position covered by this agreement, provided he is capable of performing the service." Plaintiff insists he did not report to work at the Third Trick Trouble Desk because he was not qualified and because wearing of safety glasses created a new hazard for him inasmuch as the side vents eliminated his peripheral vision in his right eye.
Even though the Federal Railroad Safety Authorization Act (FRSA), 45 U.S.C.A. § 441, does not foreclose plaintiff's whistle blower discharge claim for the reasons discussed hereinafter, we are nonetheless convinced that the FRSA impacts on plaintiff's handicap discrimination claim. 45 U.S.C.A. § 441(b)(1) provides that an employer may not discharge or discriminate against an employee "for refusing to work when confronted by a hazardous condition related to the performance of the employee's duties" if other conditions are satisfied.
Moreover, 45 U.S.C.A. § 441(c) directs that any dispute or grievance related to whether plaintiff properly refused to wear safety glasses while working at the Third Trick Double Desk must be submitted to the mandatory and exclusive dispute resolution procedure established in 45 U.S.C.A. § 153. We are persuaded that Rule 15, a safety rule which undergirds plaintiff's grievance, broadly implicates 45 U.S.C.A. § 441(b) and any dispute over the interpretation and application of Rule 15 required the matter to be submitted to the mandatory and exclusive dispute resolution procedures established in 45 U.S.C.A. § 153. Also, the Board has exclusive jurisdiction over disputes arising under 45 U.S.C.A. § 441(b). See Boston & Maine Corp. v. Lenfest, 799 F.2d 795, 800 (1st Cir.1986), cert. den. 479 U.S. 1102, 107 S.Ct. 1333, 94 L.Ed.2d 184 (1987).
In addition, plaintiff argues that whether he could be required to wear safety glasses after the chemicals entered his eyes in 1986 is not arbitrable. But Rule 4-K 1(h)(1) of the CBA *227 provides that where a dispute exists regarding the arbitrability of an issue, the Board must make the determination. Reference to this rule under the facts lends further support to our determination that plaintiff's state law claim of handicap discrimination is inextricably intertwined with the CBA.[1]

IV
Plaintiff's claim of whistle blower discrimination does not implicate 45 U.S.C.A. § 441. He does not allege that he blew the whistle on French because of any violation of safety regulations. 45 U.S.C.A. § 441(a) makes clear that the FRSA whistle blower protection is limited to situations "related to the enforcement of the Federal railroad safety laws." The mandatory and exclusive dispute resolution procedures of the RLA, 45 U.S.C.A. § 153, were incorporated into the FRSA, 45 U.S.C.A. § 441(c), for the limited purpose of resolving disputes related to interpretation and enforcement of federal railroad safety laws. Plaintiff claims he was harassed and fired because French cheated the employer and not because of any safety violation. Further, there is no provision of the FRSA or the RLA that parallels our State whistle blower statute. Where, as here, the state law claim does not come within the range of the RLA or the FRSA, we find Rayner v. Smirl, 873 F.2d 60 (4th Cir.1989), cert. den. ___ U.S. ___, 110 S.Ct. 213, 107 L.Ed.2d 166 (1989), relied upon by N.J. Transit, inapplicable. See also English v. General Elec. Co., 871 F.2d 22, 23 (4th Cir.1989), cert. granted ___ U.S. ___, 110 S.Ct. 862, 107 L.Ed.2d 946 (1990) holding that a state law claim alleging a retaliatory discharge for blowing the whistle for safety violations was preempted by *228 provisions of the Energy Reorganization Act, 42 U.S.C.A. § 5851.
We are further persuaded that the State law whistle blower claim (N.J.S.A. 34:19-1 to 8) is not inextricably intertwined with the interpretation or application of the CBA. The claim in this case is to be distinguished from a similar claim presented in Andrews, supra, which relied on the CBA as the basis for the claim. Here, plaintiff's claim is based exclusively on the State statute independent of the CBA. See Lingle, 486 U.S. at 405-08, 108 S.Ct. at 1881-1882, 100 L.Ed.2d at 419-420; LePore v. National Tool & Mfg. Co., 224 N.J. Super. 463, 481, 540 A.2d 1296 (App.Div. 1988), aff'd 115 N.J. 226, 557 A.2d 1371 (1989). However dubious this claim may be, it was improper to dismiss it on summary judgment.

V
Finally, plaintiff contends the trial judge should not have dismissed the second count of the complaint which alleged that his union, BRS, failed to properly represent him. This count was also dismissed because the trial judge concluded it, too, represents a minor dispute. We do not decide whether the cause of action had accrued by January 27, 1988 when the complaint was filed, since the BRS continued to represent plaintiff through March 1989 respecting his grievance. Independent of whether a cause of action had accrued, we are persuaded the trial judge properly dismissed it as a minor dispute.
There is no indication that the BRS failed to handle plaintiff's grievance in a timely fashion or that N.J. Transit repudiated the grievance machinery. On the contrary, N.J. Transit has fully participated in the grievance mechanism. Even though the BRS handled much of the grievance on behalf of plaintiff, plaintiff always had the right to forego union representation. 45 U.S.C.A. § 153 (First) (j). Plaintiff's real concern was limited to the results reached in the two special agreements *229 negotiated on plaintiff's behalf. Indeed, the BRS continued to handle the grievance after plaintiff directed the BRS to cease representing him.
Additionally, plaintiff provided self-representation before the matter reached the Board. The Board rendered a final decision on May 9, 1989. Because plaintiff elected not to petition the Board independent of his union, and he also elected not to participate in all of the proceedings, the union proceeded on his behalf. Nor can it be said the alleged breach of fair representation by the BRS prejudiced plaintiff's right to present his grievance before the Board. We are therefore satisfied the trial judge properly dismissed count two of the complaint as a minor dispute. See Childs v. Pennsylvania Fed'n Bhd. of Maintenance Way Employees, 831 F.2d 429, 437-441 (3rd Cir.1987); Masy v. New Jersey Rail Operations, Inc., 790 F.2d 322, 325-326 (3rd Cir.), cert. den. 479 U.S. 916, 107 S.Ct. 320, 93 L.Ed.2d 293 (1986).
Summary judgments dismissing counts two and three of the complaint are affirmed. The dismissal of count one is reversed and remanded to the Law Division for further proceedings.
NOTES
[1] The record reveals that the union has processed plaintiff's grievance and the Board rendered its decision on May 9, 1989. The record does not disclose whether an appeal from the Board's decision has been filed in the federal court pursuant to the RLA, 45 U.S.C.A. § 153 (First) (q), and such an appeal has been characterized as "`among the narrowest known to the law.'" Union Pacific R. Co. v. Sheehan, 439 U.S. 89, 91, 99 S.Ct. 399, 401, 58 L.Ed.2d 354, 357 (1978).