**Talaat LABIB, M.D., Plaintiff,**

v.

**Nabil Y. YOUNAN, M.D., and Seashore Anesthesia Associates, P.A., Defendants.**

**Civ. A. No. 90–3682(MHC).**

United States District Court, D. New Jersey.

Jan. 23, 1991.

Tomar, Simonoff, Adourian & O'Brien by Ronald A. Graziano, Haddonfield, N.J., for plaintiff.

Sherman, Silverstein & Kohl by Andrew J. Karcich, Pennsauken, N.J., for defendants.

## OPINION

GERRY, Chief Judge:

Presently before the court, in this action alleging breach of contract and oral agreements, fraud, and statutory violations, is a motion by defendants Nabil Y. Younan, M.D. and Seashore Anesthesia Associates,

P.A. ("Seashore"), for a stay of proceedings pending arbitration. For the reasons stated below, the defendants' motion is granted in part and denied in part.

## I. BACKGROUND

In early 1983, plaintiff, Talaat Labib, M.D., became employed as a doctor by the anesthesia practice of defendant Nabil Y. Younan, originally named Younan Anesthesia and later known as Seashore Anesthesia Associates, P.A. ("Seashore"), which serves Shore Memorial Hospital ("hospital") at Somers Point, New Jersey. The employment contract signed in November, 1982, and a subsequent employment contract signed in November, 1985, contained an identical arbitration clause, which provided:

> *Arbitration:* Any controversies or disagreements arising out of, or relating to this Agreement or breach thereof, shall be settled by arbitration in accordance with the rules then existing of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction thereof.

Employment Contract, ¶ 13. Furthermore, the agreement was to be interpreted by applying New Jersey state law. Employment Contract, ¶ 16.

The plaintiff claims that defendant Younan orally represented that Labib would remain employed as long as his work was satisfactory and would eventually become a partner in the practice. However, in November, 1989, plaintiff purportedly told both defendant Younan and hospital officials that he was aware of allegedly improper Medicare and insurance reimbursement practices by Younan and refused to acquiesce in such practices. On January 8, 1990, plaintiff was discharged from his employment by defendant Younan. On September 11, 1990, Labib filed a complaint in this court alleging retaliatory termination of employment,[1] breach of the employment contract, fraudulent inducement, breach of

---

**1.** This claim arises under the New Jersey Conscientious Employee Protection Act ("C.E.P.A."), N.J.S.A. 34:19–1 to 34:19–8 (West 1988).

oral agreements regarding employment security and partnership role, and a breach of good faith and fair dealing. Our jurisdiction is based upon diversity of citizenship, with the amount in controversy allegedly exceeding $50,000, pursuant to 28 U.S.C. § 1332. Defendants have moved to stay proceedings in this court under the contractual arbitration provision and the New Jersey Arbitration and Award Act, N.J.S.A. § 2A:24–1 to 2A:24–11 (West 1987).

## II. DISCUSSION

Defendants Younan and Seashore allege that the arbitration clause in the contract is very broad and covers all disputes arising out of or relating to the contract, and thus this entire action must be stayed pending arbitration. Plaintiff Labib counters that the defendants are not entitled to a stay of the entire action, because most of the issues are not encompassed within the contractual arbitration provision itself.

 It is the duty of a court only to determine whether a dispute is arbitrable, and not to consider the merits of the action. *See AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648–49, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986); *Laborers' Intern. Union v. Foster Wheeler Corp.,* 868 F.2d 573, 576 (3d Cir.1989); *Laborers' Local Union v. Interstate Curb and Sidewalk,* 90 N.J. 456, 463, 448 A.2d 980 (1982); *Aysseh v. Lawn,* 180 N.J.Super. 391, 395, 434 A.2d 1146 (Ch.Div.1981). *But see Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr,* 124 Ill.2d 435, 125 Ill.Dec. 281, 530 N.E.2d 439 (1988). Because the contract, in the instant case, does not relate to maritime activities or interstate or foreign commerce,[2] we must apply state law in determining the enforceability of an arbitration clause. *See Gavlik Const. Co. v. H.F. Campbell Co.,* 526 F.2d 777, 785 (3d Cir. 1975); *Shearson Hayden Stone, Inc. v. Liang,* 493 F.Supp. 104, 106, (N.D.Ill.1980), *aff'd,* 653 F.2d 310 (7th Cir.1981); *Singer*

*Co. v. Tappan Co.,* 403 F.Supp. 322, 323 n. 1 (D.N.J.1975), *aff'd without op.,* 544 F.2d 513 (3d Cir.1976).

The New Jersey Arbitration and Award Act, N.J.S.A. § 2A:24–1 to 2A:24–11 (West 1987 & Supp.1990) provides:

> In an action brought in any court upon an issue arising out of an agreement providing for the arbitration thereof, the court, upon being satisfied that the issue involved is referable to arbitration, shall stay the action, if the applicant for the stay is not in default in proceeding with the arbitration, until an arbitration has been had in accordance with the terms of the agreement.

N.J.S.A. § 2A:24–4.

Public policy in New Jersey favors arbitration so that contracts "should be read liberally to find arbitrability if reasonably possible." *Brick Township Municipal Utilities Authority v. Diversified R.B. & T. Construction Co.,* 171 N.J.Super. 397, 402, 409 A.2d 806, 808 (App.Div.1979); *J. Baranello & Sons, Inc. v. City of Paterson,* 168 N.J.Super. 502, 507, 403 A.2d 919 (App.Div.), *certif. den.,* 81 N.J. 340, 407 A.2d 1214 (1979); *Hudik–Ross, Inc. v. 1530 Palisade Ave. Corp.,* 131 N.J.Super. 159, 165, 329 A.2d 70 (App.Div.1974). *See also Ohio Cas. Ins. Co. v. Benson,* 87 N.J. 191, 196, 432 A.2d 905 (1981); *Harmuth Engineering Co. v. Franklin Universal Bldg. Corp.,* 178 N.J.Super. 380, 429 A.2d 378 (App.Div.), *certif. den.,* 87 N.J. 390, 434 A.2d 1072 (1981). This state policy mirrors federal arbitration policy, as to which the United States Supreme Court has declared that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983). Thus, "an order to arbitrate ... should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the

---

**2.** Arbitration clauses in contracts involved in disputes concerning such commerce are governed by the Federal Arbitration Act, 9 U.S.C. §§ 1–15 (1990), whose language is very similar to the New Jersey Act. Although not binding authority, we are guided by decisions applying the federal Act. *See infra.*

asserted dispute.... In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where ... the arbitration clause [is] quite broad." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–85, 80 S.Ct. 1347, 1352–54, 4 L.Ed.2d 1409 (1960).

At the same time, "the authority of the arbitrators is derived from the mutual assent of the parties to the terms of submission; the parties are bound only to the extent, and in the manner, and under the circumstances pointed out in their agreement, and no further. The parties have a right to stand upon the precise terms of their contract." *Brick Township*, 171 N.J. Super. at 402, 409 A.2d 806 (citations omitted).

▇ The arbitration clause, in the instant case, is very broad and mandates arbitration for "[a]ny controversies or disagreements arising out of, or relating to this Agreement or the breach thereof...." The plaintiff's claims are based on alleged breaches of provisions in the written employment contract itself, as well as purported breaches of fair dealing and of oral agreements, the tort of fraudulent inducement and statutory violations. Plaintiff maintains that this court must not stay judicial proceedings as to those issues which arise, not out of the written employment contract *per se*, but rather from the actual employment relationship between the plaintiff and defendants. We believe that this is a distinction without a difference and that plaintiff's narrow interpretation of the arbitration clause is "hypertechnical". See *Hudik–Ross*, 131 N.J.Super. at 165, 329 A.2d 70. We find that all of the plaintiff's claims are "related to" the employment contract and will stay proceedings pending arbitration except as to those causes of action for which competing policy considerations obligate us to adjudicate.

The parties have not directed our attention to, nor has our research uncovered, any case applying New Jersey law specifically discussing whether a particular oral agreement between contracting parties falls within the purview of a contractual arbitration clause. However, our liberal construction of the arbitration provision, in the case at bar, comports with cases applying analogous law and we believe would be the likely determination by the New Jersey Supreme Court on this issue.

The Third Circuit, applying federal law based upon the Federal Arbitration Act, has found subsequent oral agreements between parties to fall within the arbitration clause of a written contract. In *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39 (3d Cir.1978), the court held that a dispute concerning an alleged oral agreement related to the terms of a written agreement governing renewal or expiration of employment, so that the issue "arose out of" the written contract and was arbitrable. Similarly, the court in *United Engineering and Foundry Employees Assoc. v. United Engineering and Foundry Co.*, 389 F.2d 479, 481 (3d Cir. 1967), held that an alleged oral agreement fell within the purview of a provision which permitted arbitration for grievances concerning "the meaning or application of the terms and provisions of this Agreement...." The arbitration provision, in the instant case, is arguably broader than that in *United Engineering*. See also *Local 1401, Retail Clerks Int. Ass'n v. Woodman's Food Mkt., Inc.*, 371 F.2d 199 (7th Cir.1966) (an alleged oral agreement concerning the reinstatement of a discharged employee affected a "condition of employment" within the meaning of an arbitration clause in the written contract); *Mandich v. North Star Partnership*, 450 N.W.2d 173 (Minn.Ct.App.1990); *Grunwald–Marx, Inc. v. Los Angeles Joint Board, Amalgamated Clothing Workers*, 192 Cal.App.2d 268, 13 Cal.Rptr. 446 (1961). Some courts have construed a broad arbitration clause, such as the one in the case at bar, to apply to all disputes arising out of the same subject matter, such as a construction project or an employment relationship. See, e.g., *A.E. Staley Manufacturing Co. v. Robertson*, 200 Ill.App.3d 725, 146 Ill.Dec. 471, 558 N.E.2d 434 *appeal den.*, 133 Ill.2d 551, 149

Ill.Dec. 315, 561 N.E.2d 685 (1990); *Ozdeger v. Altay,* 66 Ill.App.3d 629, 632, 23 Ill.Dec. 446, 384 N.E.2d 82 (1978).

Cases which have held that an oral agreement did not fall within the scope of an arbitration provision in a separate written contract may be distinguished because the two agreements involved two completely separate obligations, *see Eugene W. Kelsey & Son, Inc. v. Architectural Openings, Inc.,* 484 So.2d 610 (Fla.Dist.Ct.App.), *review den.,* 492 So.2d 1330 (Fla.1986), were inconsistent with one another, *see Marine Engineers Beneficial Assoc. v. Falcon Carriers, Inc.,* 374 F.Supp. 1342 (S.D. N.Y.1974), or where the written contract was unsigned, *see Jim Halsey Co. v. Bonar,* 284 Ark. 461, 683 S.W.2d 898 (1985). None of those conditions are present in the case at bar. We find that, in the instant case, the purported oral agreements are extensions of the employment relationship which was created, and governed, by the written contract. As such, plaintiff's claims alleging breaches of oral agreements are related to the written employment agreement and are arbitrable.

■ Furthermore, a claim that the plaintiff was fraudulently induced to enter the entire contract, and not merely the arbitration clause itself, may be submitted to arbitration. *See Schneider, Inc. v. Research–Cottrell, Inc.,* 474 F.Supp. 1179, 1185 (W.D.Pa.1979); *Coleman v. National Movie–Dine, Inc.,* 449 F.Supp. 945, 948 (E.D.Pa.1978). Likewise, the plaintiff's claim alleging a breach of good faith and fair dealing in the employment relationship, is "related to" a breach of the employment agreement and is arbitrable.

In sum, we agree with the defendants that the employment agreement was drafted to govern the employment relationship and the termination of that relationship. All of these employment issues rest upon the validity and enforcement of the written employment agreement. As noted *supra,* we do not decide the merits of these allegations. Rather, given the breadth of the

arbitration clause and the requirement that we construe such a provision liberally, we find that these claims concern disputes that are "related to" the employment agreement, or a breach of the agreement, and therefore, in the absence of competing policy considerations, must be determined by the arbitrator. We certainly cannot say with "positive assurance," *see United Steel Workers, supra,* that the arbitration clause cannot be interpreted so as to encompass such disputes.

■ However, we find that the strong public policy against retaliatory employment discharges weighs against the general policy in favor of arbitration and compels us not to stay proceedings as to the plaintiff's First and Second Counts.[3] We realize that there should not be an "unnecessary bifurcation of disputes between judicial resolution and arbitration." *Benson,* 87 N.J. at 199, 432 A.2d 905. However, as the plaintiff points out, "conflicting results are a potential every time multiple claims arise out of the same transaction" and should not prevent two proceedings from taking place, particularly if severing the claims helps to advance public policy goals. *New Jersey Manufacturers Ins. Co. v. Haran,* 128 N.J.Super. 265, 269, 319 A.2d 768 (App. Div.1974). *See also Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 221–22, 105 S.Ct. 1238, 1242–43, 84 L.Ed.2d 158 (1985).

New Jersey courts have recently emphasized the importance of judicial adjudication of claims alleging retaliatory discharge from employment, even where the plaintiff is covered under an existing employment agreement containing a binding arbitration provision. *See, e.g., Maher v. New Jersey Transit Rail Operations, Inc.,* 239 N.J.Super. 213, 227–28, 570 A.2d 1289 (App.Div. 1990); *Lepore v. National Tool and Mfg. Co.,* 224 N.J.Super. 463, 540 A.2d 1296 (App.Div.1988), *aff'd,* 115 N.J. 226, 557 A.2d 1371, *cert. denied,* — U.S. —, 110 S.Ct. 366, 107 L.Ed.2d 353 (1989). *Lepore* addressed, *inter alia,* the issue as to whether a binding arbitration provision in a

---

**3.** Because C.E.P.A. is a codification of New Jersey public policy prohibiting an employer from taking any retaliatory action against an employee, plaintiff's second count appears to be subsumed within his first count. However, we will not decide this issue at present.

collective bargaining agreement precluded judicial recourse over a claim of retaliatory termination, which arose prior to the enactment of C.E.P.A.[4] The court correctly viewed C.E.P.A. as the codification of the common-law tort of retaliatory discharge, and which "reaffirm[ed] . . . this state's repugnance to an employer's retaliation against an employee who has done nothing more than assert statutory rights and protections. . . ." 224 N.J.Super. at 470, 540 A.2d 1296. The court then noted that an arbitral determination applies different considerations than that applied by a court and does not ordinarily consider public policy or legal violations. 224 N.J.Super. at 472, 540 A.2d 1296. The court found that the right of an employee to be free from suffering a retaliatory discharge must be included within those "substantive non-waivable rights of all workers, separate and distinct from rights created by the collective bargaining agreement, [such that] judicial recourse is permitted notwithstanding the existence of binding arbitration." *Id. Cf. Thornton v. Potamkin Chevrolet,* 94 N.J. 1, 462 A.2d 133 (1983) (failure to allege a discrimination claim in a prior arbitration proceeding does not bar filing the claim with an administrative agency).

Similarly, the United States Supreme Court in *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) found that an employee, included within a collective bargaining agreement containing a binding arbitration provision, may still file a claim in court alleging retaliatory discharge in violation of independent state law. The court recognized that "notwithstanding the strong policies encouraging arbitration, 'different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers.'" 486 U.S. at 411–12, 108 S.Ct. at 1884–85 (quoting *Atchison T. & S.F.R. Co. v. Buell,* 480 U.S. 557, 564–65, 107 S.Ct. 1410, 1415, 94 L.Ed.2d 563 (1987)). Although these cases involved collective bargaining agreements and therefore discussed potential pre-emption of state claims by § 301 of the federal Labor Management Relations Act of 1947, 29 U.S.C. § 185, we see no reason not to apply the same analysis to an individual employment agreement.

For the foregoing reasons, the First and Second Counts of Plaintiff's Complaint will be severed from the Third through Sixth Counts; only the latter claims will be stayed pending arbitration. Defendants' motion to stay proceedings pending arbitration shall be granted in part and denied in part. An appropriate order shall be filed this day.